IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN C. CASEY,
      Plaintiff,

vs.                                       Case No.: 5:16cv138/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]
      Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 9, 10). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Carolyn W. Colvin as the Defendant in this case.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.  PROCEDURAL HISTORY

On October 10, 2012, Plaintiff filed an application for DIB, alleging disability beginning on January 26, 2011 (Tr. 15).[2] His application was denied initially and on reconsideration, and thereafter he requested a hearing before an administrative law judge ("ALJ").  A hearing was held on September 30, 2014, and on January 9, 2015, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (Tr. 15–24).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

---

[2] All references to "Tr." refer to the transcript of Social Security Administration record filed on September 22, 2016 (ECF No. 14).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

## II.    FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 15–24):

(a)    Plaintiff last met the insured status requirement of the Act on June 30, 2014;

(b)    Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of January 26, 2011, through his date last insured;

(c)    Through the date last insured, Plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), anxiety disorder, depressive disorder, and anti-social personality disorder;

(d)    Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(e)    Through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), such that Plaintiff could lift/carry up to 20 pounds occasionally and up to 10 pounds frequently.  He could sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday.  He could occasionally climb ladders, ropes, or

scaffolds. Plaintiff was to avoid concentrated exposure to humidity, dust, and fumes; have only frequent contact with the public, coworkers, or supervisors; and work at no more than a regular pace (no assembly line work, no production rate);

(f)     Through the date last insured, Plaintiff was unable to perform any past relevant work;

(g)     Plaintiff was born on February 22, 1967, and was 47 years old, which is defined as a younger individual aged 18–49, on the date last insured;

(h)     Plaintiff had a limited education and was able to communicate in English;

(i)     Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not he had transferable job skills;

(j)     Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed;

(k)     Plaintiff was not under a disability, as defined in the Act, at any time from January 26, 2011, the alleged onset date, through June 30, 2014, the date last insured.

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125

F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.  If the claimant is performing substantial gainful activity, he is not disabled.

2.  If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL AND MEDICAL HISTORY

A.    Personal History

At Plaintiff's hearing, held September 30, 2014, he testified he was 47 years old, with a seventh grade education.  He stated that he last worked full-time as a pipe fitter and welder, following which he worked his last job for a month on a part-time basis repairing lawnmower engines (Tr. 35–36).  Plaintiff indicated that he could no longer work because of the breathing issues caused by his COPD, which hospitalized him a couple of times, and his chronic back pain (Tr. 38).  Plaintiff's back pain originated from his being shot in the back in 2006 (Tr. 38–39).  Plaintiff testified that, after his hospitalization for the injury, during which he was paralyzed from the waist down for two days, the injury did not bother him at first (Tr. 40).  As the years went by, however, the pain became more painful, as his doctor at the time had told him, and now he is in constant pain (Tr. 39–40).  Plaintiff acknowledged that he has not had much medical treatment for his back but said that was because there was not much that could be done about it (Tr. 40).  He stated he has been prescribed pain pills, which he sometimes takes and sometimes does not (*id*.).  Plaintiff said that surgical removal of the bullet was not a good option because there was a 50/50 chance the operation could leave him paralyzed (*id*.).

Plaintiff stated that he has difficulty sitting or standing for long periods and that his legs get numb (Tr. 38).  He testified that he could probably walk one city block without having to stop and rest (Tr. 39).  He stated that he could stand for no longer

than 30 minutes before having to sit due to pain or discomfort, but that sitting causes

him pain which, after about 10 minutes, causes him to get up and move about (*id*.).

Plaintiff indicated that he sometimes gets out of breath without exerting himself,

simply by talking (Tr. 41).  He stated that he took "Albuterol, Sepacor and Theofalan

[sic]" for his breathing problems as well as a nebulizer and a rescue inhaler when

necessary (Tr. 42–43).  Plaintiff reported that the results of a recent breathing test

indicated that he had the lungs of an 80 year old man who had been smoking all his

life (Tr. 43).

As noted by the ALJ, on June 12, 2014, Plaintiff related an incident to his social

worker that he rode a "four wheeler" to a local dam, as he frequently did, because his

driver's licence was suspended.  He was stopped by law enforcement while driving

on a "road easement" on his way to the path that he takes to and from the dam, and

they informed him that his use of the four wheeler, evidently on the road easement,

constituted driving without a license (Tr. 383).

B.     Relevant Medical History

Plaintiff's medical record reveals that as far back as March 31, 2006, he was

noted to have mild COPD and chronic lower back pain (Tr. 246).  The impression of

V.M. Saenz, M.D., was of "old spondylosis of L5 without associated

spondylolisthesis" (*id*.).  Also noted was evidence of Plaintiff's gun shot injury "with

a bullet fragment projecting in the lower left paraspinal area at approximately the level of T11" (Tr. 246, 252). When Plaintiff was hospitalized because of gastrointestinal issues on August 3, 2007, among the diagnoses were asthma and emphysema (Tr. 253, 259).

Plaintiff was seen on January 14, 2012, complaining that it hurt to breathe and that it felt like he was going to pass out (Tr. 299). COPD was suspected (Tr. 300). For followup, Plaintiff visited the office of Ahmad Ismail, M.D., on March 26, 2012, with complaints of "pain all over," chronic back pain, and shortness of breath (Tr. 271). As Plaintiff asserts, Dr. Ismail's notes appear to indicate that Plaintiff was complaining of not having enough breath. However, Dr. Ismail did not otherwise comment on this medical issue, and the notes from his examination indicate that Plaintiff's lungs were clear (*id.*). Plaintiff's diagnoses of chronic back pain, hypertension, osteoarthritis, and COPD were also noted (*id.*). During an April 10, 2012, followup visit, Plaintiff indicated his shortness of breath was getting better (Tr. 270). On April 27, 2012, Plaintiff's chief complaint was back pain without paraesthesia or weakness of extremities (Tr. 269).

Plaintiff presented to Gulf Coast Medical Center on May 13, 2012, complaining of cough and fever and thought he had pneumonia, which had been recurring with him (Tr. 287). Plaintiff was diagnosed with bronchitis with chest pain and was discharged

(Tr. 290). At a July 3, 2012, followup visit with Dr. Ismail, Plaintiff complained of shortness of breath with occasional paroxysmal nocturnal dyspnea and orthopnea (Tr. 268). Dr. Ismail also noted that the range of motion in Plaintiff's lower spine was mildly less and that toe and heel-walking, hopping, and squatting were a little more difficult for Plaintiff (*id*.). On August 2, 2012, Plaintiff complained of elbow pain which Dr. Ismail diagnosed as osteoarthritis (Tr. 267).

Plaintiff again presented to the Gulf Coast Medical Center on November 9, 2012, with complaints of flu-type symptoms such as cough with green sputum, fever, and left ear pain (Tr. 280). He denied shortness of breath and was noted not be in respiratory distress or to have other respiratory symptoms besides "prolonged expiratory phase and wheezes" (Tr. 280, 282). A chest x-ray evidenced symptoms of COPD and re-affirmed the presence of the bullet fragment projecting to the left lower thoracic spine (Tr. 284). Plaintiff was determined to have chronic bronchitis and was discharged (Tr. 282). Plaintiff was next seen at the Center on December 17, 2012, again with complaints of flu symptoms, cough, fever, headache, and myalgias; he denied shortness of breath, pleuritic pain, wheezing, and dyspnea on exertion (Tr. 276–77).

Plaintiff saw Dr. Ismail on February 25, 2014, complaining that his lower back pain was flaring up and would worsen after standing no more than twenty minutes (Tr.

352). Plaintiff was again seen on March 21, 2014, for a chest cold and then on April 16, 2014, for COPD (Tr. 350–51). Plaintiff was seen on April 22, 2104, for lower back pain (Tr. 349) and on May 23, 2014, for symptoms of pneumonia (Tr. 348). On June 24, 2014, Plaintiff complained of lower back pain, osteoarthritis, and stiffness lasting a few hours in the morning (Tr. 347). Throughout the course of these checkups, Plaintiff was prescribed Xanax and Lortab.

Plaintiff was seen at the Gulf Coast Medical Center on January 15, 2014, with complaints about lower abdominal pain lasting for two days and vomiting with blood (Tr. 302). He was found to possibly have "periaortic lymphadenopathy of indeterminate clinical significance," directed to follow up as an outpatient with a gastroenterologist, and released (Tr. 307). During this visit, Plaintiff reported no shortness of breath, plueritic pain, wheezing, or dyspnea (Tr. 303). Plaintiff was also seen at the Center on February 28, 2014, complaining about increased shortness of breath and congestion (Tr. 370) and on May 7, 2014, for shortness of breath and cough with wheezing and dyspnea on exertion (Tr. 364). He was seen on June 10, 2014, after an incident where he hit his head while entering a vehicle, causing neck and shoulder pain; he denied back pain at that time (Tr. 359). Plaintiff also denied shortness of breath, dyspnea, or dyspnea on exertion, and on examination he was

found to have wheezes but no respiratory distress and no chest tenderness (Tr. 21,
359–63).

As is relevant to Plaintiff's COPD, a spirometry test for pulmonary function
was conducted on February 25, 2014, but Plaintiff was not able to perform the test
correctly due to coughing and shortness of breath (Tr. 390). A second test was
performed on September 26, 2014, nearly three months after the date Plaintiff was last
insured for DIB purposes. The test provided results indicating an FEV1 value of 0.84
and an FVC value of 1.33, less than the corresponding values in the Listings (i.e., 1.85
and 2.30, respectively). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.02.[3]


V.     DISCUSSION

Plaintiff contends the ALJ erred by failing to include Plaintiff's back problems,
as caused by his gunshot wound, among the medically determinable severe
impairments that the ALJ identified in step two of the analysis. As Defendant points
out, however, during step two the proper determination is simply whether a claimant

---

[3] *See also* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 300 ("Spirometry, which measures
how well you move air into and out of your lungs, involves at least three forced expiratory
maneuvers during the same test session. A forced expiratory maneuver is a maximum inhalation
followed by a forced maximum exhalation, and measures exhaled volumes of air over time. The
volume of air you exhale in the first second of the forced expiratory maneuver is the FEV1. The total
volume of air that you exhale during the entire forced expiratory maneuver is the FVC.")

has a condition that qualifies as a severe impairment. As stated by the Eleventh

Circuit:

> This step acts as a filter; if no severe impairment is shown the claim is denied, *but the finding of any severe impairment*, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, *is enough to satisfy the requirement of step two*. *See, e.g.*, Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); *see also* Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986); McDaniel [v. Bowen], 800 F.2d [1026,] 1031 [(11th Cir. 1986)].

Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (emphases added).

Thus, all that was required at step two was for the ALJ to find that Plaintiff had

a severe impairment; the ALJ did not need to identify any particular impairment or

enumerate all the impairments that are found to be severe. Tuggerson-Brown v.

Comm'r of Soc. Sec., 572 F. App'x 949, 951–52 (11th Cir. 2014); Heatly v. Comm'r

of Soc. Sec., 382 F. App'x 823, 824–25 (11th Cir. 2010). So long as an ALJ provides

that he has taken all of a claimant's impairments into consideration when determining

his capacity to work at steps three and beyond, any omission during step two is of no

consequence. Tuggerson-Brown, 572 F. App'x at 951–52; Perry v. Astrue, 280 F.

App'x 887, 893–94 (11th Cir. 2008).

Here, the ALJ stated that he considered all of Plaintiff's symptoms in determining his RFC (i.e., a restriction to light work with additional limitations) (Tr. 20–21). Moreover, the ALJ addressed Plaintiff's gunshot wound and back issues:

> The undersigned finds that the claimant's impairment of status-post gunshot wound to the back in the remote past was a non-severe impairment because the medical and other evidence established only a slight abnormality that would have had no more than a minimal effect on the claimant's ability to perform basic work activities. The longitudinal medical record shows that the claimant has a history of a gunshot wound to his back in 1996 with an intact bullet. However, the evidence of record shows that the claimant was able to work at substantial gainful activity levels after sustaining this gunshot wound. In addition, treatment notes of Ahmad Ismail, M.D., dated March 26, 2012, indicate that the claimant had full range of motion and records from Gulf Coast Medical Center, dated December 17, 2012, show that the claimant had independent ambulatory status. Furthermore, there is little, if any, treatment for the claimant's back since his alleged onset date of disability. Moreover, records from Life Management, dated June 12, 2014, show that the claimant reported that he rode a four wheeler to a dam frequently. On June 12, 2014, the clamant reported that he rode his four-wheeler to the dam and was watching people fish, but got a ticket for driving while suspended when he was leaving.

 (Tr. 18) (citations to record omitted).

Accordingly, the court finds that Plaintiff's back pain and the gunshot wound from which it originated were adequately considered by the ALJ and in any event need not have been included among the identified severe impairments during step two of the analysis.

Next, Plaintiff asserts—without discussion—that the ALJ should have found the osteoarthritis in his elbow to be a severe impairment. Dr. Ismail diagnosed osteoarthritis of the elbow. As with Plaintiff's similar claim regarding the gunshot wound in his back, at step two in the analysis it is only required that the ALJ find that Plaintiff has a severe impairment, and it is not required that the ALJ identify all severe impairments or any particular impairment.

Furthermore, Plaintiff's argument, sparse as it is, states only the fact of the diagnosis and points to no parts of the record where Plaintiff's osteoarthritis caused him to have demonstrable limitations that the ALJ should have recognized. As Defendant points out, and as summarized above, Dr. Ismail diagnosed Plaintiff with osteoarthritis of the elbow, but he never indicated any specific limitations attributable to this condition (Tr. 272–75, 352). Diagnoses alone are insufficient to establish a severe impairment. Rather, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); *see also* Russell v. Astrue, 331 F. App'x 678, 681 (11th Cir. 2009) (rejecting claim where plaintiff asserted that her high blood pressure caused her to be disabled but failed to point to any documentation in her medical records demonstrating how it might so cause disability); Moore v. Barnhart, 405 F.3d 1208,

1213 n.6 (11th Cir. 2005) (holding that "To a large extent, [the plaintiff] questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.") (citation omitted).

Plaintiff next contends that the ALJ erred by not finding that Plaintiff, on account of his COPD, met or equaled the criteria for Listing 3.02 such that he should have been presumed disabled under step three without further inquiry. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02 (Listing 3.02). As provided by the Eleventh Circuit:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.
> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *See* 20 C.F.R. § 404.1525(a)–(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *See id.*

Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (footnote omitted). As with the severity determination at step two, a diagnosis alone is insufficient to establish that

a Listing is met at step three.  <u>Gibbs v. Comm'r of Soc. Sec.</u>, 686 F. App'x 799, 800

(11th Cir. 2017) (citing 20 C.F.R. § 416.925(d)).  "For a claimant to show that his

impairment matches a listing, it must meet all of the specified medical criteria.  An

impairment that manifests only some of those criteria, no matter how severely, does

not qualify."  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).

In attempting to show that he meets § 3.02 of the Listings, Plaintiff points to the

results obtained on the spirometry test performed on September 26, 2014.  As noted

earlier, however, and as recognized by the ALJ, this test was administered almost

three months after Plaintiff's last day of insured status for DIB purposes, June 30,

2014 (Tr. 388, 18).  Disability must be proven to have existed at the time that the

claimant is insured under the requirements of the Act.   <u>McLain v. Comm'r, Soc. Sec.</u>

<u>Admin.</u>, 676 F. App'x 935, 937 (11th Cir. 2017) (citing <u>Moore v. Barnhart</u>, 405 F.3d

1208, 1211 (11th Cir. 2005)); <u>Demandre v. Califano</u>, 591 F.2d 1088, 1090 (5th Cir.

1979); <u>Douglas v. Comm'r of Soc. Sec.</u>, 486 F. App'x 72, 75 (11th Cir. 2012).  If it

is shown that the claimant became disabled after the date he was last insured, the

claim must be denied despite the development of this disability.  <u>McLain</u>, 676 F.

App'x at 937; <u>Demandre</u>, 591 F.2d at 1090; <u>Douglas</u>, 486 F. App'x at 75.

Additionally, the ALJ fully surveyed the medical notes in the record pertaining

to Plaintiff's COPD, and as Defendant points out, during June 2014, the month in

which Plaintiff's insured status would end, he was admitted to the Gulf Coast Medical Center after hitting his head, but denied any shortness of breath, pleuritic pain, or dyspnea at that time and was found to have some wheezes in his lungs but no respiratory distress or chest tenderness (Tr. 359–63). Likewise, treatment notes from Dr. Ismail ranging from February to June of 2014 indicate that he consistently found Plaintiff's breath sounds to be clear (Tr. 347–52). The ALJ thus found that "[t]he claimant's limitations have been accounted for in the residual functional capacity assessment and none of the claimant's doctors have opined that the claimant's COPD would be more limiting than what is accounted for in the residual functional capacity assessment" (Tr. 21). The court concurs and finds that Plaintiff failed to show that his COPD rose to the level of disabling severity so as to meet the criteria of the Listing during the relevant time.

Last, Plaintiff argues that the ALJ failed to use the correct hypothetical question to the Vocational Expert ("VE") in his decision. Plaintiff asserts that the ALJ should have incorporated the third hypothetical question that he posed to the VE into his opinion instead of the second one. A hypothetical question must comprehensively describe a claimant's condition, and VE testimony that does not accurately address that condition cannot be considered substantial record evidence. <u>Pendley v. Heckler</u>,

767 F.2d 1561, 1563 (11th Cir. 1985).  Beyond that, however, the ALJ is not required to include findings in the hypothetical that he has properly rejected as unsupported. *See* McSwain v. Bowen, 814 F.2d 617, 620 n.2 (11th Cir. 1987).  In the instant case, the ALJ asked the VE to consider a hypothetical individual

with limitations consistent with his RFC assessment (Tr. 20, 45–46).  The VE answered that the individual would be able to perform jobs as a vegetable sorter, ticket taker, and house sitter, all with significant numbers of available jobs in Florida and the United States.

Plaintiff's argument, largely vague, appears to be a roundabout way of challenging the ALJ's RFC assessment without actually doing so.  The court finds the ALJ's RFC determination to be supported by substantial medical and opinion evidence as referenced in his decision.


VI.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED:**

1.      Nancy A. Berryhill is substituted for Carolyn W. Colvin as Defendant in this action.

2.      The decision of the Commissioner is **AFFIRMED**, this action is **DISMISSED,** and the clerk is directed to close the file.

At Pensacola, Florida this 25<u>th</u> day of September 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**